# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

―――――――――――――

Nº 16-CV-01125 (JFB)

―――――――――――――

RICHARD DAVIDSON,

Petitioner,

VERSUS

SUPERINTENDENT CUNNINGHAM,

Respondent.

―――――――――――――

**MEMORANDUM AND ORDER**
August 29, 2017

―――――――――――――

JOSEPH F. BIANCO, District Judge:

On March 7, 2016, Richard Davidson ("petitioner" or "Davidson") petitioned this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State Supreme Court (the "trial court") on eight grounds. Following a jury trial, petitioner was convicted of the lesser included offense of second-degree assault (New York Penal Law ("NYPL") § 120.05[2]), two counts of second-degree criminal possession of a weapon (NYPL § 265.03[1][b] and [3]), and attempted third

degree assault (NYPL §§ 110/120.00(1)). (Resp. Aff., ECF No. 7, at ¶ 8; *see also* T.[1] 1402-03.) On July 2, 2013, the trial court: (1) set aside the second-degree assault conviction pursuant to New York Criminal Procedure Law ("CPL") § 330.30; (2) sentenced petitioner to concurrent terms of seven and one-half years and two and one-half years of post-release supervision for the two weapon-possession convictions; and (3) sentenced petitioner to time served for his attempted assault conviction. (S.[2] at 6, 23.) Subsequently, the Supreme Court, Appellate Division, Sec-

―――――――――――――

[1] "T." refers to the trial transcript. (ECF Nos. 7-1 to 7-2.)

[2] "S." refers to the sentencing transcript. (ECF No. 7-3.)

ond Department ("Appellate Division") reversed the trial court's decision to set aside the second-degree assault verdict and remanded the case to the trial court for resentencing, *People v. Davidson*, 122 A.D.3d 937, 938 (N.Y. App. Div. 2014), which resulted in a determinate term of four years of imprisonment and two years of post-release supervision served concurrently with his other sentences. (Resp. Aff. ¶ 10).

Petitioner challenges his conviction on the following eight grounds: (1) the trial court erred in denying a mistrial following the question by the prosecutor to a defense witness that suggested that petitioner purchased a silver handgun in Georgia; (2) the prosecutor committed misconduct during summation in referencing petitioner's post-arrest silence; (3) the trial court erred in permitting the prosecutor's peremptory challenges to remove African-Americans from the jury panel in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); (4) the trial court improperly allowed the People's ballistics expert to testify with a "reasonable degree of certainty" that the recovered shell casings were fired from the same source; (5) the trial court issued an impermissible circumstantial-evidence charge to the jury; (6) the Appellate Division erroneously reversed the trial court's order to set aside petitioner's second-degree assault conviction, (Pet., ECF No. 1, at 6-12); (7) the indictment was defective because it was based on legally insufficient evidence; and (8) petitioner was denied effective assistance of counsel because counsel failed to move to dismiss certain counts of the indictment, to object to alleged trial-related prosecutorial misconduct, and to effectively question a defense witness. (Aff. Supp. Petitioner's Amend. of Habear Pet. ("Pet. Amend."), ECF 11, at 2; *see also* Resp. Aff. Opp'n Supp., ECF No. 13 ("Resp. Supp. Aff."), at ¶ 10.) For the reasons discussed below, the petition is denied in its entirety.

## I. BACKGROUND

The following facts are adduced from the petition, respondent's affidavit and memorandum in opposition, petitioner's reply, petitioner's supplemental affidavit in support of his amendment to the petition, respondent's affidavit and memorandum in opposition to supplemental papers, and the underlying record.

### A. Factual Background

#### 1. Underlying Crime

On September 23, 2010, petitioner punched Tony Hinds at Hinds's workplace, accused Hinds of having an affair with petitioner's wife, and verbally threatened Hinds. (T. 671-72.) Approximately two months later, on November 21, 2010, petitioner again appeared outside Hinds's workplace. (*Id.* at 702, 754, 819-826.) He approached Hinds, pulled a handgun from his pocket, and began shooting. (*Id.* at 702-03, 824-27.) Multiple bullets struck Hinds in the back of his legs as he ran into the building. (*Id.* at 702-03, 708, 734, 748-53.) Petitioner pursued Hinds and shot him again at close range. (*Id.* at 703, 824-27.) Petitioner then fled. (*Id.* 703-04, 828.) Hinds sustained multiple gunshot wounds in his back, shoulder, and legs. (*Id.* at 1103-05.) Although he was bleeding heavily when paramedics arrived, doctors diagnosed only soft-tissue injuries that could be treated by cleaning and dressing at the hospital. (*Id.* at 568-71, 1114.)

#### 2. Jury Selection

During jury selection, the People exercised peremptory challenges on eight African-American jurors, and petitioner raised *Batson* objections. (*Id.* at 400-05.) First, the People challenged Verace Skeete (*id.* at 201), who had a pending charge with the Nassau County District Attorney's Office (*id.* at 79-

80). The defense argued the prosecution violated *Batson* because four white individuals who "had close relatives presently or in the past prosecuted by this office" were not challenged. (*Id.* at 402-03.) The People argued Skeete's challenge was used because the Nassau County DA's Office was "currently prosecuting him."[3] (*Id.* at 414.)

Second, the People challenged Kimesha McPherson (*id.* at 282), whose fiancé was convicted of a felony by the Assistant District Attorney handling the *voir dire* (*id.* at 225-26). McPherson also stated that she did not believe the court system, the ADA, or the Nassau County DA's office treated her fiancé fairly. (*Id.* at 227-28.) Defense counsel argued the People violated *Batson* because they did not challenge four white individuals whose relatives either had been, or were in the process of being, prosecuted by the office. (*Id.* at 402-03.) The People claimed they challenged McPherson "because her fiancé was prosecuted only a year ago" by the same ADA working on the instant case and "she did not volunteer that information." (*Id.* at 415-16.)

Third, the People challenged Noe Arastil (*id.* at 281), a teacher and a native of Haiti (*id.* at 275). The defense alleged a *Batson* violation because the People did not get anything out of him that "deem[ed] him to be challenged." (*Id.* at 402.) The People reasoned the challenge was made because of potential language issues, and Arastil's body language suggested he was not "receptive to what" the prosecution was saying.[4] (*Id.* at 417-18.)

Fourth, the People challenged Carlene Bailey (*id.* at 280), a nurse (*id.* at 414), whose two brothers were convicted of crimes in the city (*id.* at 234). Defense counsel alleged a *Batson* violation based on the challenge to Bailey because she stated "the prosecutor treated her brothers fairly." (*Id.* at 402.) The People claimed they challenged Bailey because she was a nurse, an occupation the DA's office trains prosecutors not to look for in jury selection. (*Id.* at 414-15.) Similarly, the People pointed out that they challenged another individual who was not African-American "because she works within a hospital as a doctor." (*Id.* at 415.) In addition, the People perceived a "level of hostility" from her body language—shrugging her arms and rolling her eyes—"inside and outside the courtroom." (*Id.* at 414.)

The People also challenged Wanda Capers (*id.* at 282), a police officer's wife (*id.* at 229-30), who worked at a full-service law firm that sometimes handles criminal matters (*id.* at 230). The defense alleged a *Batson* violation because "[Capers'] husband is a police officer" and so "[c]learly pro-prosecution." (*Id.* at 402.) The People reasoned, however, that it challenged Capers because "she works for a full-service law firm that includes criminal-type work . . . despite the fact that her husband is in the NYPD." (*Id.* at 418.) The People also noted that it also "got[] rid of [a] white female" because "[s]he was also a lawyer who had sat on a criminal jury . . . [who] would have some knowledge of criminal-type cases." (*Id.* at 418.)

The People challenged Nkenge Fuller (*id.* at 386), whose *voir dire* revealed that she witnessed a history of "ongoing domestic abuse" toward her mother that resulted in regular contact with police (*id.* at 350-51). The defense argued Fuller would be "pro-prosecu-

---

[3] The record reflects that, although there were three African-American prospective jurors in that round of *voir dire*, Skreete was the only one challenged by the prosecutor, with one being challenged by the defense and one being seated as a juror. (T. 413-13.)

[4] The People noted that he sat with his arms crossed while being questioned and he gave one word answers to those questions. (T. 417.)

tion" because of her experience as "an individual who has been a victim." (*Id.* at 400-01.) The People reasoned Fuller's experiences "hit[] too close to home" because "this case does deal, to a certain extent, with the way men treat women." (*Id.* at 419-20.) In addition, the People asserted that Fuller's body language—"she did not make eye contact" and "[s]he sat with her arms crossed"—supported the challenge. (*Id.* at 420-21.)

Next, the People challenged Pasquale Delva (*id.* at 387), who was unemployed (*id.* at 346). Defense counsel alleged a *Batson* violation because Delva seemed "pro-prosecution." (*Id.* at 400.) The People claimed Delva was challenged because she was "an unemployed individual." (*Id.* at 421.) In addition, the People noted its peremptory challenge of a white juror on the grounds of his unemployment. (*Id.* at 419.)

Finally, the People challenged Diane Nelson (*id.* at 388), whose husband was a pastor in Brooklyn (*id.* at 357). Here, defense counsel argued that Nelson was "also seemingly pro-prosecution" because her husband, like the victim in petitioner's case, was "a member of the clergy." (*Id.* at 401.) The People reasoned Nelson may judge the complainant too strongly as a representation of her husband because of his alleged affair with the petitioner's wife. (*Id.* at 421.)

The trial court found "the explanations of the People regarding race-neutral reasons for the peremptory challenges" acceptable and denied the defendant's *Batson* applications with one exception. (*Id.* at 431.) The court accepted the defendant's *Batson* application

as to Arastil and gave the defense an additional peremptory challenge because "all we have on that situation is short answers and [Arastil] folding his arms."[5] (*Id.* at 431.)

2. Presentation of Evidence

At the outset of trial, during *voir dire*, the court charged the jurors that "statements of counsel are not evidence." (*Id.* at 154.) The court repeated its instruction prior to opening statements, during trial, and during its final charge. (*Id.* at 498-99, 805-06, 1316.)

The People's first witness was police officer Rita Bopp-Carroll. (*Id.* at 526.) Officer Carroll testified to seeing the victim, Tony Hinds, "sitting . . . on the floor . . . bleeding." (*Id.* at 531.) Hinds told the officer "he had been shot." (*Id.* at 532.) Second, the People called Marc Pollack, a New York State Paramedic (*id.* at 563), who responded to the reported shooting (*id.* 568). Pollack testified to seeing Officer Carroll rendering care to Hinds, who "appeared to be suffering from multiple gunshot wounds." (*Id.* at 569.) The People also called Dr. Venkadesh Sasthakunar, who treated the victim at the Nassau University Medical Center. (*Id.* at 1100.) Dr. Sasthkunar noted that Hinds suffered "multiple gunshot wounds." (*Id.* at 1104-05.)

In addition, the People called Tony Hinds, the victim in this case, to testify. (*Id.* at 650.) Hinds testified that, on November 21, 2010, petitioner arrived at his place of work at 40 Lois Place, pulled out a gun, and shot him multiple times. (*Id.* at 702-08.) Hinds further testified that petitioner used a silver handgun in the assault. (*Id.* at 703.)

---

[5] The trial court did not address the prosecutor's concerns about Arastil's language issues. It gave an additional peremptory challenge instead of re-seating the juror because he had already been dismissed at the time of the challenge. The government's brief to the Appellate Division indicated that the sworn jury was

composed of two African-Americans, two Asian-Americans, and eight Caucasians, with two African-American alternate jurors also sworn. (*See* Resp.'s Br. on Direct Appeal, ECF No. 7-15, at 8.) Although no citation to the record was provided in the brief, opposing counsel did not dispute that assertion.

Next, Michael Bryan, Hinds's employee, testified that he recognized petitioner as the man approaching Hinds on November 21 from an altercation in September, and to hearing gunshots shortly after seeing petitioner's hands moving. (*Id.* at 816, 822-25.) Later, Michael Privnow, who lives nearby, also testified that he heard approximately six or seven gunshots on November 21, 2010. (*Id.* at 979, 985.)

Finally, the People called Frank Miller, a detective previously assigned to the ballistics unit with the Firearm Identification Section, as a ballistics expert. (*Id.* at 863-64.) During his testimony, the trial court asked Miller if he "form[ed] an opinion, with a reasonable degree of certainty" as to whether seven shell casings recovered from the scene were fired from a common weapon. (*Id.* at 872-73.) Miller "determined [the shell casings] were fired by one common source firearm." (*Id.*)

After calling all of its witnesses, the prosecution moved to reduce one of the first degree assault charges to the lesser included crime of assault in the second-degree. (*Id.* at 1146-48.) The defense did not object to the prosecution's application, and the court granted it. (*Id.* at 1147-48.)

During his case-in-chief, petitioner called Filesta Mathurin as a witness. (*Id.* at 1185.) On cross-examination, the prosecutor asked Mathurin, "[D]id you ever see the silver handgun [petitioner] had purchased in Georgia?"[6] (*Id.* at 1188.) Defense counsel objected to the question and moved to strike it. (*Id.* at 1188-89.) The court sustained the objection and instructed the jury to disregard the remark. (*Id.*)

Defense counsel also moved for a mistrial on the basis of the question (*id.* at 1189),

which the court later denied (*id.* at 1233, 1236). Instead, the court allowed the defense to draft a curative instruction that it read to the jury (*id.* at 1236), instructing them that, "despite the implication made during the prosecution's questions of Mathurin, there has been no evidence that [petitioner] ever purchased a gun" (*id.* at 1244-45). During summation, the prosecutor stated "the defendant was calm" during his arrest and that he "[w]asn't yelling," "screaming," or "confused." (*Id.* at 1303.) Defense counsel objected to the prosecution's description, but was overruled by the court. (*Id.*) At the end of the trial, the court instructed the jurors that "if two inferences can be drawn, one consistent with guilt or one consistent with lack of guilt, you must give the inference consistent with lack of guilt to the defendant." (*Id.* at 1318-19.)

### 3. Verdict & Sentence

The jury found petitioner guilty of the reduced count of second-degree assault (NYPL § 120.05[2]), two counts of second-degree criminal possession of a weapon (NYPL § 265.03[1][b] and [3]), and attempted third degree assault (NYPL § NYPL § 110/120.00(1). (T. 1402-03.) Petitioner then moved to set aside the verdict pursuant to CPL § 330.30. On July 2, 2013, the trial court denied the motion to set aside in part and granted the motion in part. (ECF No. 7 at 1.) For his weapon-possession convictions, petitioner was sentenced to concurrent terms of seven and one-half years of imprisonment and two and one-half years of post-release supervision, and to time served for his attempted assault conviction. (Resp. Aff. ¶ 9.) The trial court set aside the second-degree assault conviction because the reduction from first-degree assault improperly

---

[6] Prior to the prosecutor's question, the jury learned of a "silver handgun" during Tony Hinds' testimony (T.703), but no witness had testified as to the origin of

that weapon.

amended the indictment and created a non-waivable jurisdictional infirmity. (*Id.* ¶ 9.)

### 4. Direct Appeal

On appeal, the Appellate Division reversed the trial court's order to set aside the second-degree assault, reinstated the verdict, and remanded for re-sentencing. *Davidson*, 122 A.D.3d at 937. The court reasoned that "the alleged amendment of the indictment was not a non-waivable defect, and the defendant was required to make a timely objection at trial to preserve . . . a claim pursuant to CPL 330.30(1)." *Id.* The petitioner was then sentenced to a determinate term of four years of imprisonment and two years of post-release supervision served concurrently with his other sentences. (Resp. Aff. ¶ 10.)

Meanwhile, petitioner argued on appeal that: (1) the trial court erroneously denied defense counsel's mistrial motion based on alleged prosecutorial misconduct; (2) the People improperly used its peremptory challenges in violation of *Batson*; (3) the trial court erred by permitting the expert's ballistics testimony; and (4) the trial court improperly gave a "two-inference" circumstantial evidence charge to the jury. (*Id.* at ¶ 11.) The Appellate Division rejected the claim of prosecutorial misconduct and the *Batson* claim on the merits, and held that "[t]he defendant's remaining contentions are unpreserved for appellate review" pursuant to C.P.L. § 470.05[2]. *Davidson*, 122 A.D.3d at 939-40.

Petitioner sought leave to appeal to the New York State Court of Appeals from the Appellate Division's decision to reverse and remand the trial court's order to set aside and the court's affirmance of the convictions. (Resp. Aff. ¶ 12.) In addition, petitioner indicated that he sought to raise every issue raised on appeal before the Appellate Division. (*Id.*). The Court of Appeals denied both

leave applications. *People v. Davidson*, 25 N.Y.3d 950, 950 (2015).

### 5. Collateral Challenge

On September 23, 2015, petitioner filed a collateral challenge to his conviction under C.P.L. § 440.10. (Resp. Supp. Aff. ¶ 6.) Petitioner argued that the indictment was defective because the People failed to offer sufficient evidence that petitioner possessed an operable handgun as related to the second-degree criminal possession of a weapon charge. (*Id.*) He also raised an ineffective of counsel claim because of counsel's alleged failure to seek dismissal of the two second-degree criminal possession of a weapon and the first and third-degree assault counts in the indictment, and failure to object to the following exchange during the People's direct of Hinds:

Q. Did you see the gun come in through the door?

A. It was all dark. I didn't put the lights on. So, it was dark. So, he pushed his hand in but then I saw the smoke, I saw all the fire, all the after shock of the discharge of the gun.

Q. You testified it was a silver handgun, correct?

A. Yes.

(T. 703; Pet. Amend. 3-5.) On November 12, 2015, the Nassau County Supreme Court denied petitioner's motion, finding the claims were "not supported by the record and should have properly been raised in his appeal." *People v. Davidson*, Ind. No. 2550N-2010, Mot. No. C-006, at 2 (Sup. Ct. Nassau County Nov. 9, 2015 (Quinn, J.) (citing C.P.L. § 440.10(2)(c)). Petitioner's application for leave to appeal to the Appellate Division was denied on February 5, 2016, and his initial leave to appeal to the Court of Appeals

from the Appellate Division's denial was withdrawn, effective May 4, 2016. (Resp. Supp. Aff. ¶ 6.)

## B. Procedural History

On March 7, 2016, petitioner filed the first part of his *pro se* petition for writ of habeas corpus raising six claims pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Respondent filed its affidavit and memorandum of law in opposition to the petition on May 2, 2016. (ECF No. 7.) Petitioner then submitted a reply to respondent's memorandum of law on September 6, 2016. (ECF No. 12.)

On July 11, 2016, this Court granted petitioner's request to amend his habeas petition by filing supplemental claims; and, on August 31, 2016, petitioner filed supplemental papers containing two additional claims in support of the instant habeas petition. (ECF No. 11.) In turn, Respondent filed an additional affidavit and memorandum of law in opposition to the supplemental papers in support of the petition on September 16, 2016 (ECF No. 13), to which petitioner submitted his reply on October 11, 2016 (ECF No. 14). The Court has fully considered the parties' submissions.

## II. Standard of Review

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudi-

cated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2554. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must

also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

Petitioner argues that he is entitled to habeas relief because the trial court erred in: (1) denying a mistrial due to alleged cross-examination-related prosecutorial misconduct; (2) allowing prosecutorial misconduct during summation; (3) denying petitioner's *Batson* challenges; (4) allowing testimony from the People's ballistics expert; and (5) issuing a "two-inference" circumstantial-evidence charge to the jury. (Pet. 6-12; *see also* Resp. Aff. ¶ 15.) He further contends that: (1) the Appellate Division erroneously reversed the trial court's order to set aside the second-degree assault conviction; (2) the indictment was defective because it was based on legally insufficient evidence; and (3) petitioner was denied effective assistance of counsel. (Pet. 13; Pet. Amend. 3-5.)

For the reasons discussed below, the Court denies the petition in its entirety. Petitioner's claims as to the summation-related prosecutorial misconduct, ballistics expert's testimony, improper jury instruction, ineffective assistance of counsel, and defective indictment are procedurally barred, and, in any event, lack merit. In addition, petitioner's

claims as to the trial court's denial of a mistrial due to alleged cross-examination-related prosecutorial misconduct, *Batson* challenges, and the Appellate Division's reversal of the trial court's decision to set-aside the second-degree assault conviction each lack merit, and thus do not warrant federal habeas relief.

### A. Procedural Bar

#### 1. Independent and Adequate State Ground

A petitioner's federal claims may be procedurally barred from habeas review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991); *see, e.g.*, *Michigan v. Long*, 463 U.S. 1032, 1041 (1983). A procedural rule is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261-65 (1989) ("[A] state court that wishes to rely on a procedural bar rule in a one-line *pro forma* order easily can write that 'relief is denied for reasons of procedural default.'"); *see, e.g.*, *Allan v. Conway*, No. 08–CV–4894 (JFB), 2012 WL 7083, at *9 (E.D.N.Y. January 10, 2012) ("The appellate court's statement that petitioner's claim was 'unpreserved' is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue."); *Figueroa v. Grenier*, No. 02 Civ.5444 DAB, 2005 WL 249001, at *8 (S.D.N.Y. February 3, 2005) (citing *Harris*, 489 U.S. at 265 n.12) (same). In addition, a state court's reliance on an independent and adequate procedural bar precludes habeas review even if the state court also rejected the claim on the merits in the alternative. *See, e.g.*, *Harris*, 489 U.S. at

264 n. 10 (holding that "a state court need not fear reaching the merits of a federal claim in an alternative holding," so long as the state court "explicitly invokes a state procedural bar rule as a separate basis for decision"); *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996) (same).

A federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778, 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010) (citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Such prejudice can be demonstrated by showing that the error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (citation omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome a procedural default based on a miscarriage of justice, the petitioner must demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 536.

## 2. New York's Preservation Doctrine

On direct appeal, the Appellate Division determined that petitioner's claims as to the alleged summation-related prosecutorial misconduct, the admitted ballistics expert's testimony, and the circumstantial evidence jury instruction were unpreserved pursuant to New York's contemporaneous objection rule, codified at C.P.L. § 470.05(2). *See Davidson*, 122 A.D.3d at 940 ("The defendant's remaining contentions are unpreserved for appellate review (*see* CPL 470.05 [2]), and we decline to review them in the exercise of our interest of justice jurisdiction.").

"New York's contemporaneous objection rule provides that a party seeking to preserve a claim of error at trial must lodge a protest to the objectionable ruling 'at the time of such ruling . . . or at any subsequent time when the [trial] court had an opportunity of effectively changing the same.'" *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (citing C.P.L. § 470.05(2)). "New York courts consistently interpret § 470.05(2) to require that a defendant specify the grounds of alleged error in sufficient detail so that the trial court may have a fair opportunity to rectify any error." *Garvey v. Duncan*, 485 F.3d 709, 715 (2d Cir. 2007). Thus "[a] general objection is not sufficient to preserve an issue" because a "defendant must specifically focus on the alleged error." *Id.* at 714 (collecting state court authority); *see also, e.g., McCall v. Capra*, 102 F. Supp. 3d 427, 445 (E.D.N.Y. 2015) ("'The word objection alone [is] insufficient to preserve the issue for [appellate] review' in the New York state courts." (quoting *People v. Tevaha*, 644 N.E.2d 1342, 1342 (N.Y. 1994))); *Umoja v. Griffin*, No. 11 CV 0736, 2014 WL 2453620, at *21 (E.D.N.Y. May, 29 2014) (holding that petitioner's claim was procedurally barred despite "petitioner's counsel's timely object[ions]" because "counsel was not specific in his objections"); *Adams v. Artus*, No. 09–cv–1941,

2012 WL 1077451, at *7 (E.D.N.Y. Feb. 24, 2012) (finding that because counsel "twice only stated 'Objection' . . . these objections did not likely meet the specificity required to be preserved on appeal under New York's preservation rule.").

The Second Circuit has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (citing *Whitley*, 642 F.3d 278, 286-87 (2d Cir. 2011); *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007); *Garvey*, 485 F.3d at 718; *Taylor v. Harris*, 640 F.2d 1, 2 (2d Cir. 1981) (per curiam)). Furthermore, the Second Circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules." *Garcia*, 188 F.3d at 79; *see also Bossett*, 41 F.3d at 829 n.2 (respecting state court's application of § 470.05(2) as an adequate bar to federal habeas review); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991) (noting that failure to make objection at trial constitutes adequate procedural default under § 470.05(2)). Thus the New York preservation doctrine provides an independent and adequate ground for decision for the purposes of habeas review. *See id.*; *Glenn*, 98 F.3d at 724–25 (finding that failure to preserve issue for appeal was an adequate and independent state law ground precluding federal habeas review).

### 3. Summation-Related Prosecutorial Misconduct, Ballistics Expert's Testimony, and Jury-Instruction Claims

Here, the Appellate Division properly decided the summation-related prosecutorial misconduct claim, ballistics expert evidentiary claim, and jury instruction claim on adequate state procedural grounds, holding that these "contentions [were] unpreserved for appellate review" under § 470.05(2)). *Davidson*, 122 A.D.3d at 940; *see Downs*, 657

F.3d at 104 (holding that "the contemporaneous objection rule is firmly established and regularly followed New York procedural rule"). The Appellate Division's holding was independent because it "clearly and expressly stat[ed] that its judgment rests on a state procedural bar." *Reed*, 489 U.S. 263; *see also Allan*, 2012 WL 7083, at *9 ("The appellate court's statement that petitioner's claim was 'unpreserved' is sufficient to establish that it was relying on a procedural bar as an independent ground in disposing of the issue.").

In particular, petitioner's summation related prosecutorial misconduct claim was unpreserved despite defense counsel's single "objection" to the prosecution's description of petitioner's demeanor because "[a]lthough petitioner's counsel[] timely objected to the prosecutor's comments at issue . . . counsel was not specific in his objections." *Umoja*, WL 2453620, at *21; *Adams*, 2012 WL 1077451, at *7 (finding that because counsel "twice only stated 'Objection' . . . these objections did not likely meet the specificity required to be preserved on appeal under New York's preservation rule"). Similarly, petitioner's ballistics expert evidentiary claim and jury instruction claim are unpreserved because petitioner never objected (*see* T. 872-73, 1318-19), so "the [trial] court" did not have an "opportunity of effectively changing" the alleged errors, C.P.L. § 470.05(2). Thus, these unpreserved claims are procedurally barred from federal habeas review.

In addition, petitioner has not demonstrated cause for, or actual prejudice resulting from, the default. First, he has offered no explanation for why he failed to contemporaneously object to these perceived errors at trial, and thus has not shown "cause" for the procedural default. Second, he has not shown prejudice because, as discussed below, each of these claims fails on the merits and the evidence of his guilt was overwhelming. *See*

*Torres*, 316 F.3d at 152; *McLeod*, 2010 WL 5125317, at *3; *People v. Hudgins*, No. 07–CV–01862–(JFB), 2009 WL 1703266, at *6 (E.D.N.Y. June 18, 2009). Petitioner has also failed to show this case would result in a miscarriage of justice if the Court failed to review the claims on the merits because he has not demonstrated that "more likely than not . . . no reasonable juror would find him guilty beyond a reasonable doubt." *House*, 547 U.S. at 536-38. Thus, these claims are procedurally barred.

### 4. Ineffective Assistance of Counsel and Defective Indictment Claims

Similarly, petitioner's motion to vacate his judgment of conviction on claims of ineffective assistance of counsel and defective indictment pursuant to C.P.L.R. § 440.10(h) are procedurally barred on independent and adequate state grounds. The Nassau County Supreme Court denied petitioner's motion in its entirety and found that his claims were "not supported by the record and should have properly been raised in his appeal" pursuant to C.P.L. § 440.10(2)(c). *Davidson*, Ind. No. 2550N-2010, Mot. No. C-006, at 2. Section 440.10(2)(c) requires the state court to deny a motion to vacate a judgment when, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure [to raise the issue on direct appeal]." N.Y. Crim. P. L. § 440.10(2)(c). "The purpose of this rule 'is to prevent [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so.'" *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (quoting *People v. Cooks*, 491 N.E.2d 676 (N.Y. 1986)).

"[T]here is no dispute that Section 440.10 is firmly established and regularly followed." *Pierotti v. Walsh*, 834 F.3d 171, 177 (2d Cir. 2016); *see, e.g.*, *Sweet*, 353 F.3d at 140 (ruling that the state court's use of 440.10(2)(c) to deny a vacatur claim "procedurally defaulted [the vacatur claim] for the purposes of federal habeas review"); *Garcia v. Lee*, 10-CV05287 (JPO) (JLC), 2012 WL 3822137, at *19 (S.D.N.Y. Aug. 28, 2012) (holding that "C.P.L. 440.10(2)(c) [is] 'a state law ground that is independent of the federal question and adequate to support the judgment'") (quoting *Walker v. Martin*, 562 U.S. 307, 315 (2011)).

Here, the state court based its decision to deny petitioner's ineffective assistance of counsel and defective indictment claims on § 440.10(2)(c) and found neither claim to be "supported by the record." *Davidson*, Ind. No. 2550N-2010, Mot. No. C-006 (Quinn, J.), at 2. "[W]here the basis for an ineffective assistance of counsel claim was clear from the face of the record and thus could have been raised on direct appeal, a defendant's § 440.10 motion must be denied." *Figueroa v. Heath*, No. 10–CV–0121 (JFB), 2011 WL 1838781, at *6 (E.D.N.Y. May 13, 2011) (finding that "[t]he Second Circuit has made clear that a denial of a § 440.10 motion for failure to raise a claim on direct appeal constitutes an 'independent and adequate' state procedural ground . . . [that] bars federal habeas review of a petitioner's claims") (collecting cases). Because petitioner failed to raise each claim on direct appeal, the state court's reliance on § 440.10(2)(c) to deny them provides an independent and adequate state procedural bar to habeas review. *See Murden v. Artuz*, 497 F.3d 178, 196 (2d Cir. 2007) ("Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review." (citing *Sweet*, 353 F.3d

at 140)); *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) ("[T]he failure to have raised the claim on direct review now forecloses further collateral review in state court."); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal."); *Whitehead v. Haggett*, 12-cv-04946 (AMD), 2017 WL 491651, at *8 (E.D.N.Y. Feb. 6, 2017) (finding that, where a petitioner "unjustifiably failed to argue [an] ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c) . . . [the] claim is procedurally defaulted for the purposes of federal habeas review as well" (citing *Sweet*, 353 F.3d at 140)).

Therefore, the Court can review these claims only if petitioner shows cause for the default and prejudice resulting therefrom, or shows that a miscarriage of justice would result if the Court did not review the claims. As discussed above, however, petitioner has made no such showing. As such, these claims are procedurally barred. Nevertheless, in an abundance of caution, the Court has analyzed all of petitioner's procedurally defaulted claims and determined that they fail on the merits, as discussed below.

## B. Merits Analysis

Petitioner raises eight grounds for habeas relief: (1) prosecutorial misconduct during a cross-examination; (2) prosecutorial misconduct during summation; (3) *Batson* violations; (4) the erroneous admission of ballistics expert testimony; (5) the issuance of a two-inference charge to the jury; (6) the Appellate Division's erroneous reversal of the trial court's order setting aside the second-degree assault conviction; (7) insufficiency of the evidence in the indictment; and (8) ineffective assistance of counsel. None of these arguments provides grounds for habeas relief in the instant case.

### 1. Prosecutorial Misconduct Claims

#### a. Legal Standard

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "It is 'a rare case' in which a prosecutor's improper comments are 'so prejudicial that a new trial is required.'" *United States v. Newton*, 369 F.3d 659, 680 (2d Cir. 2004) (quoting *Floyd v. Meachum*, 907 F.2d 347, 348 (2d Cir. 1990)); *see* also *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) ("[P]rosecutorial misconduct is a ground for reversal only if it causes the defendant 'substantial prejudice.'"); *Johnson v. Conway*, No. 08–CV–3302 (DLI), 2010 WL 3942897, at *6 (E.D.N.Y. Oct. 6, 2010) (noting that "the propriety of comments made by a prosecutor during summation generally does not present a meritorious federal question"). For prosecutorial misconduct to amount to constitutional error, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Instead, the prosecutor's comments "must represent 'egregious misconduct.'" *Celleri v. Marshall*, No. 07–CV–4114 (JFB), 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)); *see also Shareef*, 190 F.3d at 78 ("Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'").

To warrant relief, the Court must conclude that the comments "so infected the trial

with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 647). However, "not every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). Rather, a petitioner must show that he "suffered actual prejudice because the prosecutor's comments . . . had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct" (the "*Bentley* factors"). *Id.* at 824. This test applies to improper questions in examining witnesses as well as to improper comments made in summation. *See United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995) (summation); *United States v. McCarthy*, 54 F.3d 51, 55-56 (2d Cir. 1995) (cross-examination).

Moreover, "[w]hen analyzing the severity of alleged misconduct, the court examines the prosecutor's statements in the context of the entire trial." *Miller v. Barkley*, No. 03 Civ. 8580 (DLC), 2006 WL 298214, at *2 (S.D.N.Y. Feb. 8, 2006) (citing *Thomas*, 377 F.3d at 244); *see Jackson*, 763 F.3d at 146 ("The habeas court must consider the record as a whole . . . because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context."). In *Floyd*, for example, the court recognized one those "rare cases" where prosecutorial misconduct was so egregious to warrant reversal, and, in doing so, "emphasize[d] that [its] holding . . . [was]

based on the cumulative effect of the three alleged categories of improper remarks," and that the "case [did] not involve one, or a few isolated, brief episodes; rather, it involve[d] repeated and escalating prosecutorial misconduct from initial to closing summation." 907 F.2d at 348. In that case, "the evidence against [petitioner] was not heavy," *id.* at 356, and the prosecutor: (1) made "references to the Fifth Amendment [that] could well have been interpreted by the jury as a comment on Floyd's failure to testify," *id.* at 353; (2) "repeated remarks that the Fifth Amendment was 'a protection for the innocent' and not 'a shield' for 'the guilty' [that] incorrectly stated the law by diluting the State's burden of proof beyond a reasonable doubt and undermining the presumption of innocence," *id.* at 354; (3) "impermissibly asked the jury to pass on her personal integrity and professional ethics before deliberating on the evidence, thereby implying that she personally vouched for [a key witness's] credibility," *id.*; and, (4) "characterized [the defendant], who did not testify, as a liar literally dozens of times throughout her opening and closing summations," *id.*, and, "[e]ven more troubling, many of the prosecutor's remarks erroneously equated Floyd's alleged lies with proof of guilt beyond a reasonable doubt," *id.* at 355. The Second Circuit held that "under the totality of the circumstances presented here, that the cumulative effect of the prosecutor's persistent and clearly improper remarks amounted to such egregious misconduct as to render Floyd's trial fundamentally unfair." *Id.* at 353.

### b. Application

Here, petitioner argues two instances of prosecutorial misconduct: (1) the prosecutor's question to defense witness Mathurin regarding the purchase of a silver handgun in Georgia (T. 1188); and (2) his summation comment that petitioner "was calm" during

his arrest and "[w]asn't yelling," "screaming," or "confused" (*id.* at 1303). As set forth below, petitioner has not met the standard outlined by the Second Circuit in *Bentley* for either claim or both claims collectively.

### i. Cross-Examination Question

The prosecutor's question to Mathurin—"[D]id you ever see the silver handgun he had purchased in Georgia?" (*id.* at 1188)—did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," *Darden*, 477 U.S. at 181. First, although the prosecutor's question was improper,[7] it was not sufficiently severe to warrant habeas relief. Though the question improperly suggested petitioner had purchased a silver hangun in Georgia, the People had previously offered evidence through Hinds's testimony that petitioner possessed a silver handgun, which he fired at Hinds. (T. 703.) In light of this testimony, the prosecutor's single reference to the origins of the handgun was not so egregious as to warrant relief under the first *Bentley* factor. Indeed, courts have declined to find even more provocative comments sufficiently severe to warrant habeas relief. *See, e.g.*, *Darden*, 477 U.S. at 169 (holding that the prosecutor's comments referring to the defendant as an "animal," and implying that "the death penalty would be the only guarantee against a future similar act" did not warrant a finding of prosecutorial misconduct); *Toro v. Herbert*, No. 01-CV-3386 (JBW), 2003 WL 22992059, at *6 (E.D.N.Y. Sept. 29, 2003) (holding that reference to a petitioner as a "cold-blooded murderer" was not "sufficiently egregious—whether in isolation or when accumulated [with other improper comments]—to have denied petitioner a fair trial").

Next, the trial court's remedy to this comment minimized any prejudice from the prosecutor's question. Not only did the trial court sustain petitioner's objection before the witness answered and strike the question from the record (T. 1188), it also allowed petitioner to draft a curative instruction for the jury, instructing them that "despite the implication made during the prosecution's questions of Filesta Mathurin, there has been no evidence that [petitioner] ever purchased a gun" (*id.* at 1244-45). *See also Davidson*, 122 A.D.2d at 939 (noting that the trial court "promptly cut off the inquiry and offered a proper curative instruction that served to ameliorate any prejudicial effect that may have resulted"). Furthermore, the trial court repeatedly instructed the jury that attorney statements are not evidence (*id.* at 154-55, 498-99, 805-06, 1316), and the jury is presumed to have followed this instruction, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Accordingly, the "trial judge instructions" were sufficient to eliminate "any potential threat to petitioner's constitutional rights" and prejudice from the prosecutor's question. *Thompson*, 2007 WL 2020185, at * 16; *see also United States v. Rivera*, 971 F.2d 876, 885 (2d Cir. 1992) (concluding that the trial court's instructions cured any prejudice arising from prosecutorial error); *United States v. Cruz*, 797 F.2d 90, 93 n.1 (2d Cir. 1986) (holding that in light of the record, the argument as a whole, and the curative instructions, prosecutor's statement that "[t]he defense . . . has to convince you," although improper, did not require reversal).

Finally, under the third *Bentley* factor, petitioner has not shown that his conviction was uncertain absent the prosecutor's question. As the Second Circuit has noted, "[o]ften, the

---

[7] The question was improper because it assumed facts not in evidence, as no witness had testified that the defendant purchased a handgun in Georgia. Further, the prosecutor allegedly lacked a good faith basis to ask

this particular witness that question. (*See* T. 1224.)

existence of substantial prejudice turns upon the strength of the government's case: if proof is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Bentley*, 41 F.3d at 824-25 (holding that a petitioner failed to demonstrate a prejudice where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated"); *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks."). Here, "compelling evidence in the prosecution's case" was presented at trial for a jury to conclude beyond a reasonable doubt that petitioner was guilty, and there is no significant probability that this "isolated" question contributed to petitioner's conviction, or "had a substantial or injurious effect on the jury's verdict." *Bentley*, 41 F.3d at 825. Specifically, Hinds testified that on November 21, 2010, petitioner arrived at his place of work, pulled out a gun, and shot him multiple times. (*Id.* at 702-08.) Hinds further testified to petitioner using a silver handgun. (*Id.* at 703.) In addition, Michael Bryan, an employee of Hinds, testified that he witnessed the shooting and recognized petitioner shooter. (*Id.* at 816, 822-25.) Privnow, who lives nearby, also testified that he heard approximately six or seven gunshots on November 21, 2010. (*Id.* at 979, 985.) The People offered medical, photographic, and physical evidence to establish that Hinds suffered multiple gunshot wounds (*id.* at 529-32, 568-70, 702-04, 748-53, 1104-06), as well as ballistics evidence that the shell casings recovered from the scene came from a common firearm (*id.* 872-73.) The Court, therefore, concludes that the evidence of petitioner's guilt was overwhelming. *See, e.g., Chrysler*

*v. Guiney*, 806 F.3d 104, 120 (2d Cir. 2015); *Persad v. Conway*, 368 F. App'x 265, 266 (2d Cir. 2010); *United States v. Farmer*, 583 F.3d 131 (2d Cir. 2009).

In short, the prosecutor's question about the gun was not egregious, the trial court adequately remedied any prejudice, and the evidence of petitioner's guilt was overwhelming even without the impermissible remark. This case is thus a far cry from *Floyd*, where misconduct permeated the trial and plainly affected the fairness of the trial process itself. *See* 907 F.2d at 356-57 (noting that prosecutor's remarks, "which included both inflammatory comments and erroneous statements of law, and which implicated [petitioner's] specific constitutional right to remain silent, diverted the jury from the charges on which [petitioner] was being tried, and from the fundamental principles by which a jury must discharge its duty"). Accordingly, based upon the record, this Court cannot conclude that the decision of the Appellate Division with respect to the cross examination question was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus petitioner's request for habeas relief on this claim is denied.

ii. Improper Summation Comments

In summation, the prosecutor commented on petitioner's arrest that he "[w]asn't yelling. Wasn't screaming. He was calm. He wasn't confused . . . because he knew why the police were there . . . [and] why he was being placed under arrest." (T. 1303.) The Court concludes that this comment also does not warrant habeas relief.

The Second Circuit was faced with similar comments in *United States v. Young*, 630 Fed. App'x. 52, 54 (2d Cir. 2015), where the prosecutor's closing "emphasized the defendant's non-reaction [when confronted with incriminating evidence], claiming it was evidence of his guilt." The Second Circuit did not address whether the comment was erroneous because

> even assuming without deciding that the district court erred in allowing these isolated comments, the error was harmless. The prosecutor's comments were peripheral to the government's case. In any event, "[r]emarks of the prosecutor in summation do not amount to a denial of due process unless they constitute egregious misconduct."

*Id.* (citing *Shareef*, 190 F.3d at 78 (alteration in original)). Like in *Young*, this Court need not determine whether the prosecutor's comments here were erroneous under the Fifth Amendment because, even assuming they were, they still do not warrant relief under the *Bentley* factors. First, although the court did not sustain the objection to this remark on petitioner's demeanor, the comment does not qualify as severe under the relevant case authority. *See, e.g.*, *Darden*, 477 U.S. at 169 (reference to defendant as an "animal" and citing death penalty as only deterrent to future misconduct); *Toro*, 2003 WL 22992059, at *6 (reference to a petitioner as a "cold-blooded murderer"); *see also Young*, 630 Fed. App'x at 54.

Furthermore, petitioner has not shown that his conviction was uncertain but for the comment on his calm demeanor under the third factor. As noted above, even where a prosecutor has made improper comments, habeas relief is not warranted unless those remarks rendered the trial, as a whole, "fundamentally unfair." *Darden*, 477 U.S. at 181-

83. "Where the specific remarks the prosecutor makes neither 'touch upon [n]or bolster the most potent of the government's evidence,' a court will not generally overturn a verdict." *Miller*, 2006 WL 298214, at *3 (quoting *Elias*, 285 F.3d at 192) (further noting that "a court will not ignore otherwise strong evidence of a defendant's guilt on the basis of a single prejudicial remark" (citing *Thomas*, 377 F.3d at 245)). Such is the case here. Habeas relief is not warranted because "the prosecutor's statements were brief and constituted only a small portion of [the] summation," *Figueroa*, 2011 WL 1838781, at *6, and they did not amount to a significant part of the State's argument," *Miller*, 2006 WL 298214, at *3. *See also Escobar v. Senkowski,* No. 02–cv–8066 (LAK/THK), 2005 WL 1307939, at *15 (S.D.N.Y. May 26, 2005) ("To render a trial fundamentally unfair . . . a prosecutor's improper comments during summation must be more than 'short and fleeting,' but must instead be 'so numerous and, in combination, so prejudicial that a new trial is required.'" (quoting *Tankleff v. Senkowski,*135 F.3d 235, 253 (2d Cir. 1998))); *United States v. Rivera*, 22 F.3d 430, 437 (2d Cir. 1994) ("A prosecutor's statements during summation, if improper, will result in a denial of due process rights only if, in the context of the entire summation, they cause the defendant substantial prejudice."). In the context of this prosecutor's sixty-four-page summation, "the bulk of which focused . . . on the weight of evidence against petitioner," the brief remark that petitioner was calm, not yelling or screaming, and not confused at the time of his arrest did not cause substantial prejudice. *See Figueroa*, 2011 WL 1838781, at *6. Furthermore, even factoring in the improper cross-examination question, this case still does not present "one of those rare cases where the improper comments in a prosecutor's summation were so numerous and . . . so prejudicial" that habeas relief is warranted. *See Floyd*, 907 F.2d at

348; *see also Johnson*, 2010 WL 3942897, at *6 (noting that "the propriety of comments made by a prosecutor during summation generally does not present a meritorious federal question"). On the contrary, as noted above, the proof of guilt was strong in this case, making any potential prejudice from the prosecutor's remarks minimal. *See Thomas*, 377 F.3d at 245; *see also Modica*, 663 F.2d at 1181 ("[I]f proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial.").

In sum, in light of all of the *Bentley* factors, this Court finds that the prosecutor's summation statements were not severe and did not cause petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict. Thus, there is no basis for habeas relief on this prosecutorial misconduct claim.

## 2. *Batson* Challenges

### a. Legal Standard

In *Batson,* the Supreme Court set forth a three-part test for a trial court evaluating whether peremptory challenges were exercised in a discriminatory manner: (1) "a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the *venire* was struck because of his or her race"; (2) "[i]f the party making the *Batson* challenge establishes a *prima facie* case, the trial court must require the nonmoving party to proffer a race-neutral explanation for striking the potential juror"; and (3) "if the nonmoving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." *Galarza v. Keane*, 252 F.3d 630, 635-36 (2d Cir. 2001). (citing *Batson*, 476 U.S. at 96–98).

Under the second step, the prosecution's "explanation need not rise to the level justifying exercise of a challenge for cause," but must offer more of an explanation than a simple denial that the challenges were based on discrimination. *Id.* at 97-98. The "race-neutral explanation need not be 'persuasive, or even plausible' for the non-movant to meet his obligation at step two of the *Batson* procedure and thereby advance the inquiry to the third step." *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006) (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)); *see also United States v. Thomas*, 320 F.3d 315, 320 (2d Cir. 2003) (holding that prosecutor defending *Batson* challenge is "not required, when challenged, to persuade the court that its race-neutral reasons for striking jurors are valid or tactically sound; it is enough that they are the government's reasons"). The Second Circuit has indicated that "[n]egative experience with law enforcement, age, life experience, type of employment, demeanor, and inattentiveness have all been found to be acceptable race-neutral bases for peremptory challenges." *Moore v. Walker*, No. 99-2754, 2000 WL 1721120 (Table), at *2 (2d Cir. Nov. 16, 2000) (summary order) (collecting cases).[8]

---

[8] *See, e.g.*, *Mullins v. Bennett*, 228 F. App'x 55, 56 (2d Cir. 2007) (noting "the general recognition of employment as a race-neutral reason for exclusion"); *Messiah*, 435 F.3d at 195 (prosecutor properly challenged juror because he "had been prosecuted ten years earlier . . . and because he had four relatives in state prison); *United States v. Rudas*, 905 F.2d 38, 40-41 (2d Cir. 1990) (upholding prosecution's peremptory challenge of Hispanic venireperson, who expressed belief that police officer had once used excessive force against him); *Black v. Rock*, 103 F. Supp. 3d 305, 316 (E.D.N.Y. 2015) (holding that the prosecutor's reasoning for excluding two jurors because of their "lack of employment" was "not facially discriminatory"); *Devorce v. Phillips*, 04-CV-6155 (KMK) (MDF), 2013 WL 4406008, at *25 (S.D.N.Y. Aug. 7 2013) (finding

Nevertheless, "[t]he force of a prosecutor's explanation for challenging a minority member of a venire is obviously weakened substantially by evidence that non-minority members to whom the same explanation applies were not challenged." *United States v. Alvarado*, 951 F.2d 22, 25 (2d Cir. 1991); *see also Thomas*, 320 F.3d at 318 ("'Support for the notion that there was purposeful discrimination in the peremptory challenge may lie in the similarity between the characteristics of jurors struck and jurors accepted. Where the principal difference between them is race, the credibility of the prosecutor's explanation is much weakened.'"); *Jordan v. Lefevre*, 293 F.3d 587, 594 (2d Cir. 2002) ("'The relative plausibility or implausibility of each explanation for a particular challenge, assessed in light of the prosecution's acceptance of jurors with similar circumstances, may strengthen or weaken the assessment of the prosecution's explanation as to other challenges and thereby assist the fact-finder in determining overall intent.'" (quoting *Alvarado*, 923 F.2d at 256)); *see also Miller-El v. Dretke*, 545 U.S. 231, 232 (2005) ("If a prosecutor's proffered reason for striking a black panelist applies just as well to a white panelist allowed to serve, that is evidence tending to prove purposeful discrimination."). However, "[d]ecisions in

other circuits have observed that an explanation for a peremptory challenge, though weakened, is not automatically to be rejected simply because it applies to a non-minority venireperson who was not challenged" because "the prosecution had put forward other reasons, in addition to the trait shared with the unchallenged jurors."[9] *Alvarado*, 951 F.2d at 25.

"Throughout the *Batson* procedure, the burden of proving that a strike was exercised on an impermissible discriminatory ground remains with the movant." *Messiah*, 435 F.3d at 195; *see Farino v. Ercole*, No. 07CV3592 (ADS), 2009 WL 3232693, at *23 (E.D.N.Y. Sept. 30, 2009) (explaining that "the only burden the prosecution bears during the Batson analysis" is whether it "offered race neutral explanations for the peremptory strikes"). Thus, the third step "requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Id.* (quoting *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000)). The Second Circuit has held "that a trial judge has a 'duty at the third stage [of the *Batson* inquiry] to determine the credibility of the [non-moving party's] proffered [race-neutral] explanations' for peremptorily striking jurors." *Id.* (quoting *Lefevre*, 206

---

that the prosecutor's peremptory challenge because of the juror's "religious reservations . . . as far as making a judgment" was race-neutral); *Barbara v. Goord*, No. 98–CV4569, 2001 WL 1776159, at *6 (E.D.N.Y. Dec. 27, 2001) ("Prosecutors routinely challenge [jurors whose family members had been recently prosecuted by the authorities], regardless of race, fearing bias against the authorities."); *Green*, 414 F.3d at 300 ("[T]he unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge.").

[9] "The uneven application of a facially race-neutral explanation does not, by itself, necessarily establish the invalidity of the explanation." *Robinson v. Smith*, No. 09 Civ. 8222(GBD)(AJP), 2011 WL 1849093, at *20

(S.D.N.Y. May 17, 2011); *see, e.g.*, *United States v. Novaton*, 271 F.3d 968, 1004 (11th Cir. 2001), *cert. denied*, 535 U.S. 1120 (2002); *Matthews v. Evatt*, 105 F.3d 907, 918 (4th Cir. 1997) ("*Batson* is not violated whenever two veniremen of different races provide the same responses and one is excused and the other is not . . . because counsel must be entitled to make credibility determinations in exercising peremptory challenges."); *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1997); *United States v. Stewart*, 65 F.3d 918, 926 (11th Cir. 1995) ("We recognize that failing to strike a white juror who shares some traits with a struck black juror does not itself automatically prove the existence of discrimination.").

F.3d at 200) (brackets in original)). Ordinarily, the outcome determinative issue at step three of the *Batson* procedure is "'whether counsel's race-neutral explanation for a peremptory challenge should be believed.'" *Id.* (quoting *McKinney v. Artuz*, 326 F.3d 87, 98 (2d Cir. 2003)). As the Supreme Court has explained,

> [t]he trial court has a pivotal role in evaluating *Batson* claims. Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge." In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.

*Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (citations omitted).

Because "these determinations of credibility and demeanor lie 'peculiarly within a trial judge's province,'" reviewing courts generally must "defer to [the trial court] 'in the absence of exceptional circumstances.'" *Id.* (citing *Hernandez v. New York*, 500 U.S. 352, 365-66 (1991) (plurality opinion)). Further, even though "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility [regarding a prospective juror's demeanor], . . . on habeas review that does not suffice to supersede the trial court's credibility determination."

*Rice v. Collins*, 546 U.S. 333, 341-42 (2006). Thus, "[t]o secure habeas relief [under *Batson*], petitioner must demonstrate that a state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and that the corresponding factual determination was 'objectively unreasonable' in light of the record before the court." *Miller-El*, 537 U.S. at 348. Accordingly,

> when reviewing a *Batson* challenge in the context of a habeas petition, a trial court's conclusion that a peremptory challenge was not exercised in a discriminatory manner is entitled to a presumption of correctness, except, *inter alia*, to the extent that the trial court did not resolve the factual issues involved in the challenge or if the finding is not fairly supported by the record.

*Galarza*, 252 F.3d at 635.

#### b. Application

Petitioner claims the trial court erred in "permitting the impaneling of a jury which was . . . biased against [him]" due to alleged *Batson* violations. (Pet. 9.) The Appellate Division held that "[t]he Supreme Court properly denied the defendant's *Batson* challenges," and that its "determination that the facially neutral explanations provided by the prosecutor for excluding these prospective jurors were not pretextual . . . is supported by the record." *Davidson*, 122 A.D.3d at 939.

The Court concludes that the state courts' determinations were not unreasonable applications of clearly established federal law. On the contrary, the trial court properly applied the *Batson* analysis with respect to each of the challenged jurors. After defense counsel raised a *Batson* challenge and set forth a

*prima facie* case, the court required the prosecutor to proffer race-neutral reasons for each strike. As to jurors Skeete and McPherson, the prosecutor's reasons for the strike involved experiences with law enforcement, which have been recognized as a valid, race-neutral reason for striking a juror. *See Moore*, 2000 WL 1721120 (Table), at *2. First, the People challenged Skeete because the Nassau County DA's Office was "currently prosecuting him." (T. 414.) Similarly, McPherson was challenged because "she did not volunteer information" that "her fiancé was prosecuted" by the same ADA working on the instant case. (*Id.* at 415-16.) McPherson also believed the DA's office, and by extension the ADA handling petitioner's case, did not treat her fiancé fairly. (*Id.* at 227-28.) Like the prosecutor's challenge of a juror in *Messiah*, the prosecutor here "could reasonably have believed that a panelist who had been prosecuted—even if only for a comparatively minor offense—by the very authority prosecuting [the defendant] . . . might be unduly sympathetic to the defendant and hostile to the prosecutor." 435 F.3d at 195; *see also Rudas*, 905 F.2d at 40-44 (upholding prosecution's peremptory challenge of venireperson who expressed belief that police officer had once used excessive force against him). The defense argued these strikes violated *Batson* because white jurors with relatives who either had been, or were currently being, prosecuted were not challenged. (T. 402-04, 424-25.) Unlike those white jurors, however, Skeete *himself* was *currently* being prosecuted by the office personally, and McPherson's fiancé was prosecuted by the *same ADA* handling the instant case. Thus, while the white jurors were somewhat similarly situated, "the prosecutor [] put forward other reasons, in addition to the trait shared with the unchallenged jurors," *Alvarado*, 951

F.2d at 25, to establish that "the principal difference between them" was not race. *See Thomas*, 320 F.3d at 318.

As to jurors Fuller and Bailey, the prosecutor's reasons for the strikes included demeanor, another recognized race-neutral reason. *See Green*, 414 F.3d at 300. The prosecution challenged Fuller in part because "she did not make eye contact," "sat with her arms crossed," and consequently felt "she was already not engaging in the process." (T. 420-21.) Similarly, Bailey was challenged, in part, because the prosecution perceived a "level of hostility" from her body language "inside and outside the courtroom." *See McCrory v. Henderson*, 82 F.3d 1243, 1247-48 (2d Cir. 1996) (peremptory challenges "may legitimately be based . . . on the prosecutor's observations of the prospective juror"); *Brown*, 973 F.2d at 121 (finding that a juror's hostile demeanor is a race-neutral reason to use a strike); *Rivera v. Fischer*, No. 04-CV-2394 (JFB), 2006 WL 1084912, at *6 (E.D.N.Y. Apr. 25, 2006) (finding the state court's acceptance of the prosecutor's reason for striking three jurors because "they had their arms crossed during the entire proceeding" was not unreasonable). Determinations regarding the juror's demeanor are entitled to "great deference," as the trial court is in the unique position to observe the demeanor of the juror and to evaluate the credibility of the prosecutor's race-neutral reason. *See Snyder*, 552 U.S. at 477 (holding that the Court defers to the trial court's "determinations of credibility and demeanor"); *Hernandez*, 500 U.S. at 365-66. On an independent review of the record, the Court finds no reason, and petitioner provides none, to question the trial court's conclusion regarding this race-neutral reason.[10] *See Rice*, 546 U.S. at 126.

---

[10] In addition, the People challenged prospective juror Arastil, a teacher and native of Haiti, in part because

he sat with his arms crossed while being questioned and gave one word answers that suggested he was not

Next, the prosecution's reason for challenging jurors Fuller and Nelson included their life experiences. *See Moore*, 2000 WL 1721120 (Table), at *2. Along with her demeanor, the prosecutor challenged Fuller because of a belief that her past experience of witnessing ongoing domestic abuse toward her mother, which led to regular contact with police, would "hit[] too close to home" since petitioner's case implicated "the way men treat women." (T. 419-20.) Similarly, the People challenged Nelson because her husband, like the victim, was a pastor, and so the prosecutor felt she may judge the victim too strongly as a representation of her husband due to the victim's affair with petitioner's wife. (*Id.* at 421.) The trial court properly concluded that these reasons were race-neutral, *see Devorce*, 2013 WL 4406008, at *25 (finding that the prosecutor's peremptory challenge because of the juror's "religious reservations . . . as far as making a judgment" was race-neutral); *Johnson v. Perez*, No. 08-CV–00522(MAT), 2011 WL 5187853, at *3 (W.D.N.Y. Nov. 1, 2011) (holding that the prosecution "'sustained his burden to show that he has a facially neutral reason' based upon the fact that the prospective juror's sister had been the victim of domestic abuse"), and there is no basis to question its credibility determination at step three. *See Rice*, 546 U.S. at 126.

Finally, the prosecutor's reason for striking jurors Bailey, Capers, and Delva included their employment or lack thereof. *See Moore*, 2000 WL 1721120 (Table), at *2. First, Bailey was challenged because she is a nurse—a profession the DA's office trains prosecutors to avoid in jury selection. (T. 414-15.) Bailey's strike was supported by the prosecution's strike of a doctor in the same round who was not African-American "because she works within a hospital as a doctor." (T. 415.) Likewise, Capers was challenged because she worked in a full-service law firm that handled criminal matters, and the People also struck "a [white] lawyer who sat on a criminal jury . . . [who] would have some knowledge of criminal-type cases." (*Id.* at 418.) Finally, the People challenged Delva because she was unemployed, (*id.* at 421), and a white juror, Brandon Silver, was also challenged for this reason (*id.* at 419). These explanations were racially neutral, *see Mullins*, 228 F. App'x at 56 (noting "the general recognition of employment as a race-neutral reason for exclusion"); *Black*, 103 F. Supp. 3d at 316 (holding that the prosecutor's reasoning for excluding two jurors because of their "lack of employment" was "not facially discriminatory"), and, in light of the People's treatment of similarly-situated white jurors, the trial court did not err in crediting them, *see Jordan*, 293 F.3d at 594 ("'The relative plausibility or implausibility of each explanation for a particular challenge, assessed in light of the prosecution's acceptance of jurors with similar circumstances, may strengthen or weaken the assessment of the prosecution's explanation as to other challenges and thereby assist the

---

"receptive" to what the prosecution was saying. (T. 417-18.) The trial court sustained the *Batson* objection as to Arastil and awarded petitioner an additional peremptory challenge as a remedy. This remedy is adequate to cure any harm to petitioner, especially in light of the fact that there were other African-Americans on the jury. *See Caston v. Costello*, 74 F. Supp. 2d 262, 271 (E.D.N.Y. 1999) ("If reinstatement of the improperly challenged venirepersons is not possible because they have already been discharged, a court may call additional jurors to the venire and grant the

defendant additional peremptory challenges." (citing *McCrory*, 82 F.3d at 1247)). Therefore, the fact that the trial court granted the defense motion as to this juror in an abundance of caution does not undermine its determination as to the sufficiency of the prosecutor's explanation for the exercise of the other peremptory challenges.

fact-finder in determining overall intent.'" (quoting *Alvarado*, 923 F.2d at 256)).

In short, petitioner has not demonstrated that the "state court's finding of the absence of purposeful discrimination was incorrect by clear and convincing evidence . . . and that the corresponding factual determination was 'objectively unreasonable' in light of the record." *Miller-El*, 537 U.S. at 348. Thus, this Court finds that petitioner has failed to demonstrate that the denial of his *Batson* claim in state court involved an unreasonable application of federal law, or an unreasonable determination of the facts. Accordingly, petitioner's *Batson* claims do not warrant relief.

### 3. Reversal of Motion to Set Aside Second-Degree Assault Conviction

Petitioner's claim that the Appellate Division erred in reversing the trial court's order to set aside the second-degree assault conviction involves a question of state law and, therefore, is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see, e.g.*, *Leath v. Smith*, No. 14-CV-2804 (WFK), 2015 WL 5730577, at *7 (E.D.N.Y. Sept. 28, 2015) (holding that petitioner's § 330.30 motion to vacate his conviction "does not implicate federal law because it rests purely on enforcement of a state statutory right, and is as such not cognizable on habeas review"); *O'Halloran v. Gonyea*, No. 11–CV–346, 2015 WL 93716, at *20 (N.D.N.Y. Jan. 7, 2015) (holding that petitioner's claim that amendment of an indictment violated New York Criminal

Procedure Law was not cognizable on habeas review). Specifically, the Appellate Division reversed the Supreme Court's grant to set-aside petitioner's second-degree assault conviction pursuant to C.P.L. § 330.30(1) because "[i]n considering a motion to set aside or modify a verdict pursuant to C.P.L. 330.30(1), a trial court may only consider questions of law, not fact," and "a trial court may only consider claims of legal error under to C.P.L. 330.30(1) where those claims are properly preserved for appellate review." *Davidson*, 122 A.D.3d at 938 (citations omitted). The Appellate Division continued:

> Contrary to the Supreme Court's determination, the alleged amendment of the indictment was not a nonwaivable defect, and the defendant was required to make a timely objection at trial to preserve, for the Supreme Court's consideration, a claim pursuant to C.P.L. 330.30(1) that the indictment was impermissibly amended (citing cases). As the defendant failed to object at trial, he "waived" any challenge to the reduction of the count alleging assault in the first degree (*People v. Ford*, 62 NY2d at 279), and the Supreme Court was without authority to set aside the verdict on that ground (citing cases).

*Id.* Thus the Appellate Division's decision to reverse the trial court's order—based entirely "on [a] state law question[]"—does not warrant habeas relief. *Estelle*, 502 U.S. at 67-68.

### 5. Ballistics Expert's Testimony

#### a. Legal Standard

It is well-settled that "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." *Taylor v. Curry*, 708 F.2d 886, 891 (2d

Cir. 1983); *see also Estelle*, 502 U.S. at 67 ("Habeas corpus relief does not lie for errors of state law." (citations omitted)). Instead, for a habeas petitioner to prevail in connection with a claim regarding an evidentiary error, the petitioner must demonstrate that the error deprived him of his right to "a fundamentally fair trial." *Taylor*, 708 F.2d at 891; *see also Zarvela v. Artuz*, 364 F.3d 415, 418 (2d Cir. 2004) ("Even erroneous evidentiary rulings warrant a writ of habeas corpus only where the petitioner 'can show that the error deprived [him] of a fundamentally fair trial.'" (quoting *Rosario v. Kuhlman*, 839 F.2d 918, 925 (2d Cir. 1988))).

In determining whether a state court's alleged evidentiary error deprived petitioner of a fair trial, federal habeas courts engage in a two-part analysis, examining (1) whether the trial court's evidentiary ruling was erroneous under state law, and (2) whether the error amounted to the denial of the constitutional right to a fundamentally fair trial. *See Wade v. Mantello*, 333 F.3d 51, 59-60 & n.7 (2d Cir. 2003); *Ramos v. Phillips*, No. 104-CV-1472-ENV. 2006 WL 3681150, at *6 (E.D.N.Y. Dec 12, 2006).

b. Application

Here, petitioner argues the trial court improperly permitted the People's ballistics expert to testify that he formed an opinion "with a reasonable degree of certainty" in his field of expertise as to whether the shell casings admitted into evidence were fired from a common weapon. (T. 872-73.)  Instead, petitioner argues that the witness should only have been permitted to testify that it was "more likely than not" that the shell casing were fired from a common source.  (*See* Pet. 9; Appellant's Br. on Direct Appeal, ECF No. 7-14, at 62.)

The Court disagrees.  First, the testimony was not erroneous under state—or even federal—law, as courts routinely allow such testimony. *See, e.g.*, *United States v. Gil*, No. 16-524-cr, 2017 WL 689719, at *1 (2d Cir. Feb. 21, 2017) (finding "no manifest error in the district court's decision to allow the government's expert to testify that he reached his conclusions to a reasonable degree of certainty in the field of ballistics"); *United States v. Ashburn*, 88 F. Supp. 3d 239, 249 (E.D.N.Y. 2015) (holding that "the court will limit [the ballistics expert] to stating that his conclusions were reached to a 'reasonable degree of ballistics certainty' or a 'reasonable degree of certainty in the ballistics field'"); *People v. Wilson*, 121 A.D.3d 923, 923-24 (N.Y. App. Div. 2014) (holding that "the expert, who had . . . knowledge in the field of ballistics, was properly allowed to testify as to his opinion . . . with a reasonable degree of scientific certainty"); *People v. Middleton*, 54 N.Y.2d 42, 49 (N.Y. 1981) ("[T]he test is not whether a particular procedure is unanimously indorsed by the scientific community, but whether it is generally acceptable as reliable."); *People v. Givens*, 30 Misc. 3d 475, 478 (1980) ("This Court was unable to find any cases where firearms and toolmark identification was found to be unreliable or no longer scientifically acceptable. Nor were there instances where the testimony was ruled to be inadmissible.").  Therefore, there is no basis to conclude that the trial court's admission of the ballistics evidence was erroneous.

Furthermore, even if the trial court's admission of the expert testimony was erroneous under state law, there is no basis for the Court to conclude that this error substantially harmed petitioner and thus deprived him of his constitutional right to a fair trial.  The ballistics expert's opinion that the shell casings came from a common weapon with a "reasonable degree of certainty" was not critical

to proving petitioner's guilt beyond a reasonable doubt because, even without that testimony, the evidence of petitioner's guilt was overwhelming in that it was based on several witnesses' firsthand accounts of the assault (*see, e.g.*, T. 702-08, 816, 822-25, 979, 985) and medical, photographic, and physical evidence corroborating those accounts (*id.* at 529-32, 568-70, 702-04, 1104-06), as discussed above.

For these reasons, the Court concludes that the admission of the ballistics expert's testimony was neither contrary to, nor an unreasonable application of, clearly established federal law. Therefore, habeas relief is denied on this issue.

### 6. Improper Jury Instruction Claim

Petitioner argues that the "two-inference" jury instruction was erroneous and entitles him to relief. Jury instructions violate due process if they "fail[] to give effect to [the] requirement" that the prosecution must prove every element of a charged offense beyond a reasonable doubt. *See Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam). However, "a state prisoner making a claim of improper jury instructions faces a substantial burden." *Del Valle v. Armstrong*, 306 F.3d 1197, 1200 (2d Cir. 2002). A petitioner must establish that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violat[ed] due process,' not merely [that] 'the instruction is undesirable, erroneous, or even universally condemned.'" *Id.* at 1201 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Middleton*, 541 U.S. at 437 (explaining that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation"). In addition, "any allegedly erroneous jury instruction should be reviewed in light of the 'well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Huber v. Schriver*, 140 F. Supp. 2d 265, 282 (E.D.N.Y. 2001) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)).

In this case, the trial court's "two-inference" instruction on circumstantial evidence was not erroneous and certainly did not constitute a due process violation. The relevant section of the jury instruction reads: "With regards to circumstantial evidence, if two inferences can be drawn, one consistent with guilt or one consistent with lack of guilt, you must give the inference consistent with lack of guilt to the defendant." (T. 1318-19.) Prior to the instruction, the trial court explained the difference between direct and circumstantial evidence with an example (*id.* at 1316-18), and went on to repeatedly explain that "the People have the burden of proving . . . beyond a reasonable doubt, each and every element of the crimes charged, and the defendant's commission thereof" in order to find the defendant guilty (*id.* at 1322-23).

This instruction was not improper. Although the court's instruction differed from the New York Criminal Jury Instructions on circumstantial evidence,[11] such an inconsistency does not render an instruction erroneous so long as it accurately conveys the correct legal principle. *See United States v. George*, 779 F.3d 113, 117 (2d Cir. 2015) ("A jury instruction is erroneous if it either fails adequately to inform the jury of the law or misleads the jury as to the correct legal

---

[11] The New York Criminal Jury Instruction on circumstantial evidence provides that the jury must find the defendant guilty "[i]f the only reasonable inference . . . is that the defendant is guilty of a charged crime, and that inference is established beyond [a] reasonable doubt." C.J.I.2D (N.Y.).

standard.").  Here, the instruction did just that because it instructed the jury to resolve inferences stemming from circumstantial evidence in petitioner's favor, and, in any event, the other instructions were clear that the People bore the burden of proof.  In addition, "[b]oth the Second Circuit and the New York Appellate Division have held that the 'two inferences' charge" does not "violate[] a defendant's constitutional rights."  *Garvin v. Artest*, No. 08 Civ. 05285(PAC)(FM), 2012 WL 1428904, at *5 (S.D.N.Y. Apr. 25, 2012) (holding that "though undesirable [, the charge] adequately conveyed the prosecution's burden to the jury and was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent." (citing *Jones v. Poole*, 403 Fed. App'x 617, 619-20 (2d Cir. 2010)); *see also United States v. Inserra*, 34 F.3d 83, 91 (2d Cir. 1994) (entire charge "fairly conveyed to the jury the concept of proof beyond a reasonable doubt" despite inclusion of two inference instruction); *People v. Ellis*, 202 A.D.2d 301, 301 (N.Y. App. Div. 1994) ("[T]he two inference instruction does not constitute reversible error where, as here, the charge as a whole conveyed the prosecutor's burden of proving defendant's guilt beyond a reasonable doubt.").  There is "no clearly established due process rule, as determined by the Supreme Court, [that] proscribes such references in jury charges." *See Miller v. Phillip*, 813 F. Supp. 2d 470, 483 (quoting *Jones v. Poole*, No. 07 Civ. 6587, 2009 WL 2633669 (S.D.N.Y. Aug. 26, 2009)).

In sum, the trial court's instructions clearly gave the jury adequate information on how to assess both circumstantial and direct evidence, and clearly instructed the jury that petitioner's guilt needed to be established beyond a reasonable doubt. Therefore, habeas relief is not warranted on this issue.

### 7. Ineffective Assistance of Counsel

#### a. Legal Standard

Under the standard promulgated in *Strickland*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).  The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)).  In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691).  For instance, a "lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* at 588 (quoting *Strickland*, 466 U.S. at 690). "However,

'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner, who is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "undermine confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 226 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). However, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (citations omitted). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birken*, 336 F.3d 95, 100 (2d Cir. 2004).

b. Application

Here, petitioner claims that he was denied effective assistance of trial counsel because his attorney failed to (1) object when the prosecutor asked Hinds to confirm that he "testified it was a silver handgun" (T. 703); (2) question Mathurin about Hinds's alleged assault of petitioner on September 23, 2010, (the basis for petitioner's attempted assault conviction); and (3) seek dismissal of the two second-degree criminal possession of a weapon counts, as well as the first and third-degree assault counts in the indictment. As set forth below, each claim lacks merit.

With respect to the first *Strickland* prong, petitioner has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness. As to petitioner's argument that counsel should have objected to the question about the gun, there are strategic reasons that an attorney might "forgo objections: the conclusion that additional objections might have annoyed the judge or jury; the possibility that the prosecutor, given enough rope, would alienate the jury; the desire not to call attention to unfavorable evidence or to highlight unfavorable inferences." *Taylor v. Fischer*, No. 05 Civ. 3034 (GEL), 2006 WL 416372, at *5 (S.D.N.Y. Feb. 21, 2006). Thus, even if this question was objectionable, counsel is not necessarily deficient for declining to object to it, especially given that counsel objected to many other comments during jury-selection, direct, redirect, cross-examinations, and summation, which suggests a level of strategy in deciding when to object. *See Quinones v. Miller*, 224 Fed. App'x 44, 49 (2d Cir. 2007) (finding that counsel could have made "a strategic decision not to object, believing that an objection would only serve to highlight the statement to the jury (citing *United States v. Grunberger*, 431 F.2d at 1062, 1068-69 (2d Cir. 1970))). The same is true for his lawyer's decision not to ask Mathurin about Hind's alleged assault of petitioner on September 23, 2010, as that decision also qualifies as a strategic one and was not unreasonable in light of Mathurin's admission that she

was not "actually physically present with [petitioner] that day." *See Comfort v. LaValley*, No. 9:10-CV-677 FJS/ATB, 2011 WL 7640153, at *8 (N.D.N.Y. June 9, 2011) ("Determining the questions to ask during cross-examination and how to proceed during trial are key parts of an attorney's trial strategy."); *Chatmon v. Mance*, No. 07-CV-9655 KMK GAY, 2011 WL 5023243, at *11 (S.D.N.Y. Oct. 20, 2011) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-situated to second-guess." (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998))). Meanwhile, petitioner's claim that his lawyer should have moved to dismiss certain counts in the indictment is clearly refuted by the trial record because defense counsel *did move* for dismissal of both the assault and weapon possession charges at trial. (*See* T. 1170-74.)

Nonetheless, even assuming that petitioner was able to show that counsel's performance was deficient, petitioner cannot show that he was prejudiced as a result. Petitioner has not satisfied the second *Strickland* prong because there is no reasonable probability that the proceedings would have yielded a different outcome if his attorney had performed the actions at issue. On the question about the color of the handgun, there are only two bases for an objection to the prosecutor's question: that it was leading or that it assumed facts not in evidence. Both of these defects could have easily been corrected by simply rephrasing the question, so counsel's failure to object to this question did not prejudice petitioner, as the evidence would have likely been admitted anyway. His decision not to ask Mathurin about Hinds's assault on September 23, 2010, meanwhile, did not prejudice petitioner because Mathurin had no direct personal knowledge of such an assault, and so such questioning, if the court had allowed it, would have added little to petitioner's case. Furthermore, the evidence of

guilt was overwhelming, as discussed above, and, therefore, the trial court properly denied petitioner's motion to dismiss the assault and possession counts. Accordingly, he cannot satisfy the second prong of *Strickland*. As such, his ineffective assistance of counsel claim lacks merit and does not entitle him to habeas relief.

### 8. Insufficiency of the Evidence

#### a. Legal Standard

The law governing habeas relief from a state conviction based on insufficiency of the evidence is well established. A petitioner "'bears a very heavy burden'" when challenging evidentiary sufficiency in a writ of habeas corpus. *Einaugler v. Supreme Court of N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)). A criminal conviction in state court will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Policano v. Herbert*, 507 F.3d 111, 115–16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt" (quoting *Jackson*, 443 U.S. at 324)); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."). A criminal conviction will stand so long as "a reasonable mind

'might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

In addition, "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." *Lopez v. Riley*, 865 F.2d 30, 32–33 (2d Cir. 1989); *Davis v. Nassau*, 524 F. Supp. 2d 182, 192 (E.D.N.Y. Nov. 29, 2007) ("[A]lleged defects in a grand jury proceeding cannot provide grounds for habeas relief."). "[C]laims based on the sufficiency of the evidence presented to the grand jury are not cognizable under federal law." *Warren v. Ercole*, 07-CV-3175 (JG), 2007 WL 4224642, at *10 (E.D.N.Y. Nov. 27, 2007); *see Fabre v. Taylor*, No. 08cv5883 (DLC) (AJP), 2009 WL 162881, at *18 (S.D.N.Y. Jan. 20, 2009), *report and recommendation adopted*, 2009 WL 1457169, at *1 (May 26, 2009) (holding that a "petitioner's claim that the evidence presented to the grand jury was insufficient to indict him . . . is not cognizable on habeas review"). Even if there were error, "[a]ny error in the grand jury proceeding connected with the charging decisions [is] harmless beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 70 (1986). Indeed, "federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, [and] similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in a federal court." *Lopez*, 865 F.2d at 32 (citing *Mechanik*, 475 U.S. at 70).

Petitioner cannot prevail on a claim of legally insufficient evidence unless he can show that, viewing the evidence in the light most favorable to the prosecution, "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Flowers v. Fisher*, 296 Fed. App'x 208, 210 (2d Cir. 2008) (quoting *Jackson*, 433 U.S. at 324). When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

b. Application

As a threshold matter, petitioner's argument that the grand jury indictment was defective because of insufficient evidence is meritless and barred from federal habeas review. As noted above, it is "well-settled that claims based on the sufficiency of the evidence presented to a state Grand Jury are not cognizable under federal law and thus are not reviewable in a habeas corpus petition." *Walker v. Brown*, No. 08–CV1254, 2009 WL 2030618, at *7 (E.D.N.Y. July 10, 2009) (collecting cases). Even if there were error in the grand jury proceeding, the jury's conviction of petitioner transforms any defect into harmless error. *See Lopez*, 865 F.2d at 32. Furthermore, New York State law holds that a conviction after trial bars review of the sufficiency of the grand jury evidence. C.P.L. § 230.30(6) ("The validity of an order denying any motion made pursuant to this section is not reviewable upon an appeal from an ensuing judgment of conviction based upon legally sufficient trial evidence."); *see also People v. Whitley*, 83 A.D.3d 1107, 1108 (N.Y. App. Div. 2011) ("Since the defendant's guilt was proven beyond a reasonable doubt at trial, there can be no appellate review of the issue of whether a prima facie case was presented to the grand jury." (citing

cases)). Therefore, petitioner's defective indictment claim based on insufficiency of evidence does not warrant habeas relief.

However, in an abundance of caution, this Court will review petitioner's claim as a challenge to sufficiency of the evidence presented at trial. Petitioner argues that there was insufficient evidence to convict on two counts of second-degree criminal possession of a weapon (NYPL § 265.03[1][b] and [3]) because no weapon was presented in evidence, and so no evidence existed that petitioner possessed an operable weapon. First, petitioner's claim that the state would be unable to prove the weapon possession charge because no weapon was recovered is meritless. *See Salmon v. Hansen*, No. 1:10–CV–32 (MAD/RFT), 2011 WL 6010913, at *10 (N.D.N.Y. Dec. 1, 2011) ("New York courts have upheld convictions for criminal possession of a weapon . . . when the evidence supporting the charge was simply testimony of the victim or a witness describing the alleged weapon." (collecting state authority)); *Fabre*, 2009 WL 162881, at *18, *report and recommendation adopted*, 2009 WL 1457169, at *1 (finding that "the State's failure to recover a weapon from Fabre's person or home would not have impacted whether the State could have proven its case beyond a reasonable doubt" for "committing second degree weapon possession" (collecting state authority)). Second, evidence of the gun's operability was established by the victim's testimony that petitioner shot him (T. 703-04, 707-10), other witness testimony of hearing gunshots (*id.* at 825, 985), and ballistics evidence (*id.* at 872-73). Finally, the victim's injuries were plainly consistent with gunshot wounds. (*Id.* at 529-32, 568-70, 702-04, 1104-06.) Thus, the Court finds defendant's argument unpersuasive.

Next, to the extent petitioner inaccurately suggests that the evidence is insufficient because he was identified by only one eyewitness, Hinds, the Court also finds that argument unpersuasive. As a threshold matter, "[t]he Second Circuit has emphasized that 'the testimony of a single, uncorroborated eyewitness is generally sufficient to support conviction.'" *Martin*, 2010 WL 1740432 at *9 (quoting *United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979); *see also Bentley*, 41 F.3d at 825 (stating that eyewitness testimony and identification constituted a major portion of overwhelming evidence of guilt); *King v. Greiner*, 210 F. Supp. 2d 177, 185 (E.D.N.Y. 2002) (holding that a petitioner's claim of legally insufficient evidence lacked merit in light of eyewitness identification). Therefore, based on Hinds's testimony alone, the jury could have convicted petitioner. In any event, another witness testified to seeing petitioner shoot Hinds on November 23, 2010. (*See* T. 816-27.) As such, petitioner is not entitled to habeas relief on his insufficiency of the evidence argument.

IV.    CONCLUSION

For the reasons set forth above, this Court finds that petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall close this case.

SO ORDERED.

_____
Joseph F. Bianco
United States District Judge

Date:    August 29, 2017
         Central Islip, NY

\*　　\*　　\*

Petitioner is proceeding *pro se*. Respondent is represented by Laurie K. Gibbons of the Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.